Case 7:17-cv-00087-EKD-RSB    Document 20    Filed 06/12/18    Page 1 of 17
Pageid#: 1402

U.S. District Court
FILED
06/12/2018
s/ Susan Moody
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| CATHY W. VASS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:17-cv-87 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Cathy W. Vass ("Vass") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Vass alleges that the ALJ failed to properly weigh the physician opinions in the record, failed to properly evaluate her functional limitations, and improperly discounted her credibility. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Vass's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 15.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Vass failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is

---
[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his

1

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Vass filed for DIB on December 30, 2008, claiming that her disability began on May 12, 2007, due to nerve damage to her left side. R. 300–308, 329. Vass's date last insured was December 31, 2012. R. 13. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 103–29. On September 5, 2013, Benjamin McMillion held a hearing to consider Vass's disability claim. R. 67. Vass was represented by an attorney at the hearing, which included testimony from Vass and vocational expert Barry Hensley. R. 65–95.

On October 29, 2013, ALJ McMillion entered his decision analyzing Vass's claim under the familiar five-step process[2] and denying her claim for benefits. R. 133–44. Upon review, the Appeals Council vacated the ALJ's decision and directed an ALJ to conduct a new hearing and issue a new decision. R. 152–54. Specifically, the Appeals Council directed the ALJ to give

---

ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

further consideration to Vass's maximum residual functional capacity ("RFC"),[3] obtain evidence from a medical expert if necessary, and obtain supplemental evidence from a vocational expert if necessary. R. 12. ALJ Anne Sprague held a second administrative hearing on September 28, 2015, at which Vass was represented by an attorney and testified, along with vocational expert Mark Heilman. R. 31–64. On November 10, 2015, ALJ Sprague entered her decision denying Vass's claim for benefits. R. 12–23.

ALJ Sprague found that Vass was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease, obesity and plantar fasciitis. R. 14. ALJ Sprague determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. ALJ Sprague concluded that Vass retained the residual functional capacity ("RFC") to perform light work, limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking no more than 6 hours in an 8 hour workday; and sitting no more than 6 hours in an 8 hour workday. R. 15. ALJ Sprague further found that Vass can occasionally reach overhead and push/pull with her bilateral upper extremities; frequently climb stairs and ramps and balance; occasionally stoop, kneel and crouch; and never crawl or climb ladders, ropes or scaffolds. Id. Vass should avoid concentrated exposure to unprotected heights, dangerous equipment, extreme hot and cold temperatures and vibrations. Id. The ALJ decided that Vass could not return to her past relevant work as a bus driver, but that there existed other work in the national economy that she could perform, such as marker, office mail room clerk, and café attendant. R. 21–22.

---

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

Thus, the ALJ concluded that she was not disabled. R. 22. On January 12, 2017, the Appeals Council denied Vass's request for review, and this appeal followed. R. 1–5.

## ANALYSIS

### Treating Physician Opinions

Vass asserts that the ALJ erred by failing to give good reasons for the weight assigned to the physicians' opinions in the record. I find that the ALJ properly explained the weight given to the various physicians' opinions, which allows for meaningful review by the court and is supported by substantial evidence.

Vass alleges disability due to nerve damage on her left side arising from a cervical strain caused by a motor vehicle accident in August 2006. Vass was referred to Timothy Hormel, M.D., in November 2007. R. 871. Upon examination, Vass had decreased range of motion in her left shoulder, but a fully normal right side. Her neck flexion, extension and rotation were okay when done slowly. Dr. Hormel's impression was left shoulder arthrosis, and he recommended a cervical MRI and EMG of her left upper limb. Id.

An MRI of Vass's cervical spine taken on November 19, 2007 showed a small central protrusion at C4-C5 and prominent protrusions toward the left at C5-C6 and C6-C7 with the greatest degree of canal encroachment at C5-C6. R. 457–58. Vass also underwent a nerve conduction study, which showed normal sensory and motor latencies and voltages. R. 868. The EMG revealed abnormal polyphasic motor units in Vass's left C6-C7 axial and limb muscles and positive waves in the same distribution. Dr. Hormel's impression was "no evidence of neuropathy. Evidence of ongoing left C7 radiculopathy with some evidence of reinnervation." R. 868. Dr. Hormel continued to treat Vass through December 2008. Dr. Hormel's notes reflect that Vass underwent epidural steroid injections that "really helped," and obtained pain relief

from a TENS unit, but continued to have decreased range of motion in her left shoulder and complained of radiculopathy on her left side. R. 860, 863, 866. Vass noted picking up her grandson who weighed about 20 pounds. R. 866.

In August 2008, Thomas Ellexson, MSPT, completed a functional capacity evaluation of Vass. R. 413–23. Mr. Ellexson found that Vass consistently demonstrated difficulty with lifting, carrying, prolonged reaching, and above shoulder level handling with her right arm. R. 413. Mr. Ellexson noted, "It appears that she would meet the requirements of her previous job with the exception of being able to operate the manual door opener with her R[ight] U[pper] E[xtremity]. She would not have difficulty with if [sic] her school bus had an automatic door opener. At this time she will require a lifting restriction of 15 lbs to waist level with no above shoulder level lifting." Id.

Vass visited Dr. Hormel again in September 2010. R. 705. Vass complained of left upper limb pain and back pain and discomfort. Id. Upon examination, Vass had a modest trapezius spasm on her left side, decreased neck turning to the left, and neuropathic pain upon straight arm raising on the left. Id. Dr. Hormel recommended lifting limits of 20 pounds, and completed a second cervical spine MRI which showed disc protrusions at multiple levels, greatest at C5-6 and C6-7, both greater toward the left, with asymmetric protrusion toward the left with a formainal component at each level. R. 707–08. Vass returned to Dr. Hormel on March 14, 2011, and continued to complain of tightening in the left neck that goes into her left arm when she lifts. Upon examination, she had tightening in the left trapezius, fairly good range of motion in the shoulders with restricted head turning to the right. R. 704.

On November 5, 2011, Dr. Hormel answered written questions from Vass's attorney, indicating that Vass continued to experience pain in her left arm and upper cervical region;

Vass's pain was associated with the use of her left arm and upper cervical region; that Vass's pain interfered with her attention and concentration occasionally if she is not active, and frequently during normal activities; that Vass needed to take unscheduled breaks once every hour during an 8 hour workday to use ice heat or her TENS unit; that she must lie down, recline or otherwise support her head during an 8 hour workday, approximately once every hour or more; that she will likely have bad days due to pain; and that she cannot predictably function due to the need for breaks, stretch movement and medication. R. 995–96.

Vass underwent a second functional capacity examination performed by Bill Mercer, PT on November 2, 2011. R. 713. Mercer concluded that Vass was able to work at the medium-light level, but did show significant limitation in active cervical range of motion. R. 713–14. On November 8, 2011, Mercer responded to two questions presented by Vass's attorney, indicating that Vass is not capable of performing her pre-injury job of operating a school bus, and that Vass would not be capable of performing work on an ongoing and consistent basis in a competitive work environment. R. 993. Mercer also submitted a statement to Vass's attorney, stating that he reviewed the written job description for the Roanoke City Schools bus driver and compared it to Vass's FCE findings. Mercer stated,

> A school bus driver must be able to maintain contact with the steering wheel with her left hand around the full revolution of the wheel. In my opinion, this would be difficult for Ms. Vass over the course of multiple repetitions over a full work shift. The prolonged seated posture in a position that promotes the undesirable forward head posture (without being able to rest her head on a headrest) as well as the requirement that the driver must be able to constantly move her head in order to check mirrors, traffic and passengers would be very difficult for her in her current condition. Additionally, the repeated use of the right arm in operating the door controls, steering wheel, etc would likely increase her symptoms as did our test activities of 11-2 as documented by our re-check of 11-3.

R. 991.

6

On January 6, 2012, state agency physician John Sadler, M.D., reviewed the record and concluded that Vass could perform light work with occasional pushing/pulling, frequent climbing ramps/stairs, balancing, stooping, kneeling and crouching, but never climbing ladders/ropes/scaffolds or crawling, and limited overhead reaching. R. 109–11. Dr. Sadler also found that Vass must avoid concentrated exposure to extreme cold, wetness, vibrations and hazards. Id. On June 12, 2012, state agency physician Donald Williams, M.D., concurred with Dr. Sadler's conclusions, aside from finding that Vass could only occasionally stoop, kneel and crouch. R. 123–25.

In July 2012, Lisa Deyerle, M.D, Vass's primary care physician, completed a Medical Source Statement, and found that Vass could frequently lift 20 pounds, and that standing, walking and sitting were not affected by her impairment. R. 820–23. Dr. Deyerle found that Vass can push and pull with her upper extremities but it can aggravate her previous injury and she will start to feel a pulling sensation in her neck. Dr. Deyerle noted that Vass "knows to stop the activity in order to prevent the symptoms from worsening." R. 821. Dr. Deyerle noted that activities that require a lot of arm strength or that require Vass to get in a position where the neck is strained will cause pain. Id. Dr. Deyerle found that Vass was capable of occasional reaching in all directions, but unlimited handling, fingering and feeling, and stated, "when p[atien]t does a lot of reaching, especially overhead, it will trigger her cervical spasm. This is a subjective finding in that it would be difficult to reproduce in the office, but she does have decreased ROM at neck." R. 822.

Vass continued to seek chiropractic treatment, and her progress notes indicated that she cared for her grandchild, mowed the lawn, painted, and engaged in other activities, such as yard work, waxing her truck, and lifting a coffee table. R. 835–57.

7

On June 28, 2013, Dr. Hormel sent a letter to Vass's attorney, stating that Vass can lift between 10 to 20 pounds occasionally; less than 10 pounds frequently; would require breaks "probably once every hour" and the ability to get up, stretch and move her neck when seated; would have difficulty reaching overhead and cannot engage in gross manipulation with any weight bearing. R. 1165. Dr. Hormel found that Vass's absenteeism would depend on the type of work. Id.

The ALJ considered the medical evidence set forth above, and discussed and gave weight to each of the medical opinions in the record. The ALJ noted that when considering the opinions of "not acceptable medical sources," such as physical therapists Ellexson and Mercer, it is appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. R. 19. The ALJ considered Mr. Mercer's opinion and gave it little weight, noting that Mercer's opinion changed within a period of six days from finding that Vass can handle work at the medium to light level pursuant to her functional capacity examination, to finding that she is not capable of performing work on an ongoing and consistent basis in a competitive work environment. R. 19. The ALJ concluded that the results of Mr. Mercer's testing do not support such a restrictive change in his opinion. Id. The ALJ also noted that Mercer examined Vass one time and is not familiar with her impairments and how they affect her ability to function. Id.

The ALJ gave more weight to the opinion of Mr. Ellexson that Vass would meet the requirements of her previous job with the exception of being able to operate the manual door opener with her right arm. R. 19–20. The ALJ noted that Ellexson found that Vass had difficulty with her right upper extremity, when in fact, Vass claims she cannot work due to pain in her left

8

arm, not right arm. R. 20. The ALJ also relied upon Ellexson's finding that Vass had a good ability to perform reaching activities both at the shoulder level and overhead. Id.

The ALJ discussed Dr. Hormel and Dr. Deyerle's opinions, and gave them "some weight to the extent the claimant has the ability to lift 20 pounds occasionally and 10 pounds frequently with no standing, walking, or sitting limitations, and occasional pushing and pulling with her upper extremities." R. 20. The ALJ stated, "[t]heir opinions are consistent with the medical evidence, the objective clinical findings, the established residual functional capacity herein, the State agency opinion, and the record as a whole." Id.

The ALJ considered the state agency opinions and gave them great weight, finding them to be "supported by objective medical evidence and consistent with the established residual functional capacity herein." R. 20.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating

9

physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the ALJ's duty to provide a sufficient explanation of the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of her conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin,

10

No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)). Here, the ALJ provided an explanation of the weight given to the various physician opinions, which allows for meaningful review and is supported by substantial evidence.

Vass asserts that ALJ failed to properly consider the opinions of Mr. Mercer that Vass could not operate a school bus or maintain any ongoing work in a competitive work environment; erred by giving Mr. Ellexson's opinions more weight than Mr. Mercer; failed to provide good reasons for giving Dr. Hormel's opinions some weight; and failed to discuss the opinion of Dr. Deyerle that Vass can only occasionally reach in all directions. Pl. Br. Summ. J. p. 22–23. Vass also asserts that the ALJ erred by finding that she was limited in overhead reaching, instead of limited in reaching in all directions and handling, and in failing to include a need of rest breaks through the day. Pl. Br. Summ .J. p. 23–25. Vass asserts that Drs. Hormel, Deyerle and Mr. Ellexson all determined that she has limitations on her ability to reach and handle, and those limitations should have been included in the hypothetical question presented to the vocational expert. Pl. Br. Summ. J. p. 26. Vass also asserts that the ALJ did not properly account for the findings of Dr. Hormel and Mr. Mercer that she would need a number of rest breaks throughout the day. Id. The ALJ recognized that Dr. Hormel and Mr. Mercer concluded that Vass would need rest breaks throughout the day, but as noted previously, gave those opinions only some or limited weight. This decision is supported by the findings of other physicians in the record that Vass would not require such rest breaks, and Vass's described daily activities.

The ALJ reviewed the evidence as a whole. Upon reviewing Vass's medical records, the ALJ noted that Vass did not complain of pain to her primary care provider on numerous occasions, and her treatment has been essentially routine and conservative. The ALJ also

11

considered Vass's description of her daily activities, and found them to not be "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 20. Specifically, the ALJ noted that Vass babysits her grandson, takes care of her pet, takes care of her personal needs, prepares simple meals, does the laundry, mows the lawn, does indoor and outdoor household chores, cleans the dishes, goes shopping, is able to drive, runs errands and watches TV. Id.

The ALJ also discussed the change in Vass's allegations as to her disabling impairments over time. Vass filed her claim alleging disability due to left side nerve damage (R. 329) and her medical records reflect complaints of pain and weakness in her left cervical region. However, when undergoing functional capacity evaluations to determine if she could return to her past work as a school bus driver, Vass demonstrated pain and weakness in her right arm, which raised a question as to whether she could operate the bus door with her right upper extremity. R. 413. Notably, it is only the functional capacity examinations that reflect any impairment in Vass's right arm.

The ALJ reviewed the findings of the medical providers in detail, assigned weight to each medical opinion in the record, and provided an explanation for the weights assigned. The ALJ considered all of Vass's alleged functional limitations, and after weighing the medical evidence, opinions and Vass's testimony, arrived at a residual functional capacity that accounted for the functional limitations the ALJ found credible and supported by the record. The ALJ's assessment of the conflicting medical opinions in the record enables the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions. The ALJ's explanation of the degree of weight she gave the conflicting medical opinions includes a "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780

F.3d at 636. Thus, the ALJ sufficiently explained her reasons for the weight given to the medical opinions in the record, and her reasons are supported by substantial evidence in the record.

## Pain and Credibility[4]

Vass asserts that the ALJ failed to properly consider whether her pain is so continuous or severe that it prevents her from working a full eight hour day, and failed to properly assess her credibility. Pl. Br. Summ. J. p. 29. Vass relies upon the medical records documenting her complaints of problems with both arms and hands, a foraminal encroachment at C3-4, physical therapy records, and decreased range of motion in her cervical spine.

Vass's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis, the ALJ must the ALJ must examine all of the evidence, including the objective medical record, and determine whether Vass met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then

---

[4] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Vass's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Vass's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

evaluate the intensity and persistence of the claimed symptoms and their effect upon Vass's ability to work. Id. at 594–95.

"[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible…'" Brown v. Comm'r, 873 F.3d at 269 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). In Brown, the Court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job. Id. at 269. The Court also found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test and manage his own money. Id. at 271.

Here, the ALJ followed the required two step process, and found that Vass's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. R. 20. The ALJ outlined her reasons for this determination. Specifically, the ALJ noted that Vass described daily activities that were not as limited as one would expect given her complaints of disabling symptoms and limitations. Id. For example, Vass reported babysitting her grandson, caring for her pet, caring for her personal needs, preparing simple meals, performing laundry, mowing the lawn, performing indoor and outdoor household chores, cleaning dishes, shopping, driving, running errands, and watching TV. Id. The ALJ also noted that Vass's medical records reflect that she often did not complain of pain to her medical providers, which conflicts with her complaints of ongoing, disabling symptoms since her alleged onset date. R. 20. The ALJ further found that Vass's treatment has been conservative and

14

routine, and that evidence reflects that she may have stopped working due to emotional stress in her job, rather than physical requirements. Id.  The ALJ also noted that Vass changed her allegations from pain and discomfort in her neck and left arm to pain and limitations in her right arm during functional capacity evaluations. R. 21.  The ALJ also referred to reports in the record that Vass was able to do yard work, use a leaf blower, cut down and haul bamboo, work in her flower bed, wax her truck, vacation in Florida and take a cruise. R. 21.  The ALJ recognized that these activities do not preclude disability, but they suggest that Vass may be overstating her symptoms and limitations. Id. See Dolfax v. Astrue, No. 7:09–cv–67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Vass's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96–4p, (July 2, 1996); SSR 96–7p, (July 2, 1996).

In this case, the ALJ found that Vass's statements regarding the severity of her limitations and pain were not entirely credible because they were not supported by the objective medical evidence, her treatment history, and her daily activities. R. 20–21. The ALJ's opinion includes a detailed consideration of Vass's medical history along with Vass's own allegations. A

15

reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Substantial evidence supports the ALJ's determination that Vass's testimony is only partially credible, and that Vass is capable of performing work at the level stated in the ALJ's opinion.

Overall, Vass's argument is merely an invitation to re-weigh the evidence and conclude that Vass suffers from impairments which more severely limit her functional capacity than the RFC found by the ALJ. Vass's argument misses the review function of this court—whether substantial evidence supports the ALJ's determination. Vass does not, and cannot, point to any improper legal standard the ALJ relied upon or demonstrate that the ALJ failed to consider contradictory evidence or failed to explain the decision reached. It is the ALJ's province to weigh the evidence, determine how to handle conflicting evidence, and reach a conclusion of whether Vass is disabled. The ALJ in this case fulfilled her duties and substantial evidence supports the RFC determination and the conclusions as to Vass's credibility. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: June 12, 2018

*Robert S. Ballou*
Robert S. Ballou
United States Magistrate Judge