IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CATHY V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00087 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Cathy V. brought this action for review of defendant Nancy A. Berryhill's (the commissioner's) final decision denying her claim for disability insurance benefits (DIB) under the Social Security Act (the Act). *See* 42 U.S.C. § 405(g) (2012) (authorizing a district court to enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security"). The parties filed cross-motions for summary judgment, which the court referred to United States Magistrate Judge Robert S. Ballou for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In his report, the magistrate judge concluded that substantial evidence supported the commissioner's decision. (Dkt. No. 20.)

Cathy timely filed written objections (Dkt. No. 21), and the commissioner filed a response (Dkt. No. 22). After reviewing the pertinent portions of the record, the report, and the filings by the parties, the court concludes that Cathy's objections mostly repeat the arguments she made in her brief before the magistrate judge and thus fail to trigger de novo review. Even applying the de novo standard of review, the court will adopt the magistrate judge's

---

[1] Due to privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

recommendation in full. Accordingly, plaintiff's motion for summary judgment will be denied, defendant's motion for summary judgment will be granted, and the court will affirm the commissioner's decision.

## I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (R. & R. 2–4, Dkt. No. 20.)

## II. DISCUSSION

### A. Standard of Review

This court's review of the administrative law judge's (ALJ) underlying decision is limited. Specifically, "[a] district court's primary function in reviewing an administrative finding of no disability is to determine whether the ALJ's decision was supported by substantial evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence does not require a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); rather, it requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is "more than a mere scintilla of evidence [and] somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 673–74 (1980) (finding that de novo review of the magistrate's report and recommendation comports with due process requirements).

In order for an objection to trigger de novo review, it must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). *See also Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003). Further, objections must respond to a specific error in the report and recommendation. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). General or conclusory objections, therefore, are not proper; they are in fact considered the equivalent of a waiver. *Id*. Likewise, an objection that merely repeats the arguments made in the briefs before the magistrate judge is a general objection and is treated as a failure to object. *Moon v. BWX Techs*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012) (citing *Veney v. Astrue*, 539 F. Supp. 2d 841, 844–46 (W.D. Va. 2008)). As other courts have recognized in the social security context, "[t]he Court may reject perfunctory or rehashed objections to R & R's that amount to a second opportunity to present the arguments already considered by the Magistrate Judge." *Heffner v. Berryhill*, No. 2:16-cv-820, 2017 WL 3887155, at *3 (D.S.C. Sept. 6, 2017) (quoting *Felton v. Colvin*, No. 2:12-cv-558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014)).

**B. Cathy's Objections**

Cathy raises two objections to the report and both are mostly the type of "rehashed objections" that the *Heffner* and *Felton* courts concluded could be rejected. *See id.* That is, she made the same arguments in her summary judgment briefing before the magistrate judge, and he largely addressed them. Even if the court were to consider the rehashed objections de novo, however, it would conclude that the magistrate judge's reasoning is correct and the ALJ's determination is supported by substantial evidence.

3

### 1. Treating Physician Opinions

In her first objection, Cathy contends in general terms that the report erred in concluding that the ALJ properly explained the weight given to the various medical source opinions. (Objs. 1–4, Dkt. No. 21.) The objection is not particularly well-organized or coherent, but the court believes that Cathy is primarily challenging the ALJ's decision to give little weight to the opinions of physical therapist Mercer and Dr. Hormel, as well as the report's determination generally that that weights assigned were supported by substantial evidence. (*Id.*)

As explained by both the ALJ and the report, Mercer examined Cathy in November 2011 and provided an opinion about her functional capacity. Specifically, he concluded that she was able to work at the medium-light level, despite the fact that she showed significant limitation in her active cervical range of motion. (R. 713–14.) Only six days later, in response to questions posed by Cathy's attorney, Mercer responded that, not only was Cathy incapable of performing her pre-injury job of operating a school bus, but she would not be capable of performing any work on an ongoing and consistent basis in a competitive work environment. (R. 991, 993.)

In evaluating Mercer's opinion, the ALJ first noted that both Mercer and physical therapist Ellexson were "not acceptable medical sources." (R. 19.) She nonetheless considered their opinions and gave "little weight" to Mercer's and "more weight" to Ellexson's. (R. 19–20.) As properly noted in the report, the ALJ explained the reasons for her determinations as to how much weight to assign. (R. & R. 11–12.)

Cathy makes three primary challenges to the ALJ's treatment of Mercer's opinion, and the court will address them in turn. Her first challenge is that Ellexson's opinion should not have been given more weight than Mercer's because both only saw Cathy for a single examination. As to this first challenge, the ALJ did not rely solely—or even primarily—on the fact that

4

Mercer only examined Cathy once. Instead, she noted several other reasons why she believed Mercer's opinion was entitled to little weight. These included that the results of his testing did not support such a restrictive change in his opinion and that a finding that a person is "disabled" so as to qualify for social security benefits is an administrative finding that requires familiarity with the regulations and legal standards governing such claims, and thus it is an issue reserved to the commissioner. Accordingly, this first challenge lacks merit.

Second, Cathy challenges the ALJ's assessment that Mercer's final opinion was unreliable because it changed dramatically from his opinion six days earlier. She asserts that the updated opinion was based on more accurate information provided to him regarding the job of a school bus driver, and she contends that Mercer's updated opinion was supported by specific findings about what Cathy could and could not do. (Pl.'s Objs. 2.) Cathy's explanation for Mercer's changed opinion, however, is unconvincing. Updated information as to the duties of a school bus driver could explain why Mercer determined that Cathy could not perform that particular job, but it does nothing to explain why Mercer's opinion about Cathy's general limitations changed from her having the ability to work at the medium-light level to her having no ability to perform any competitive work. Substantial evidence thus supports the ALJ's decision to discount Mercer's opinion based on the changed opinion.

In Cathy's third challenge, she asserts that the ALJ's reliance on plaintiff's daily activities as undermining Mercer's opinions was erroneous because the activities are performed intermittently or with assistance, a fact she claims was not acknowledged by the ALJ.[2] First of all, as already noted, the ALJ expressed a number of reasons for discounting Mercer's opinion. Also, to the extent that this third challenge to Mercer's opinion is tied up with the ALJ's determination on Cathy's credibility, the court addresses it while keeping in mind the well-

---

[2] She makes the same assertion with regard to the ALJ's determination as to Cathy's credibility.

established principle that a reviewing court should not interfere with an ALJ's credibility assessment where there is evidence in the record to support the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). While true that Cathy testified she was more limited in her daily activities than expressed by the ALJ, the ALJ did not find her entirely credible as to these allegations. Instead, she found Cathy only "partially credible." (R. 21.) In particular, she found that many of Cathy's allegations about her limitations were "not consistent with the relatively mild to moderate severity reflected in the objective medical findings both prior to and after the alleged onset date, and as evidenced by the conservative degree of treatment the claimant has received." (R. 21.) Substantial evidence supports that conclusion.

Thrown into the discussion of Mercer's opinion is a contention that the report "ignored the ALJ's misstatement of Dr. Hormel's opinions regarding plaintiff's ability to sit." (Pl.'s Objs. 2.) Although she cites to nothing in her objections in support of this argument, her summary judgment brief makes the same argument and does contain citations. Specifically, she asserts that the ALJ "erroneously states that Dr. Hormel" opined Cathy has no limitations on her ability to sit. She claims that, in fact, both of Dr. Hormel's opinions state that Cathy will need breaks from sitting at least once an hour. (R. 996, 1163.)

Neither the ALJ nor the report mischaracterized Dr. Hormel's opinion, however. First of all, Dr. Hormel's second opinion did not opine that Cathy definitively had limitations on sitting. Instead, Dr. Hormel's opinion was exactly what the ALJ specifically noted: that whether or not Cathy had restrictions on sitting "would depend upon her neck position." (R. 19.) In his opinion, he further explained, "i.e., sitting [at] a computer, she would require breaks probably once every hour and the ability to get up and stretch and move her neck." (R. 1165.) Thus, the

6

ALJ did acknowledge that possible limitation.[3] Dr. Hormel's first opinion (Dkt. No. 995–96) is similarly vague as to a sitting restriction. He states that she would need unscheduled breaks,[4] but he offered no specific opinion *with regard to sitting*. Instead, he opined that she would need to "lie down, recline, *or otherwise support her head*" once an hour. (R. 996.) Nowhere does he say that it is impossible support to one's head while sitting. Thus, this challenge does not overcome the substantial evidence otherwise supporting the ALJ's decision.

Cathy's first objection briefly references two other contentions, as well. The first is that the ALJ's decision to give little weight to Dr. Hormel's opinion—which did not specify that she was limited only in one arm—was erroneous because the ALJ based it on Ellexson's finding that Cathy had difficulty with her right upper extremity and an assertion that she was only alleging disability due to pain in her left arm. Cathy claims that this ignores her testimony that she has difficulty using both arms, as well as her testimony that she cannot work due to pain in her neck, her need to lie down during the day, and her difficulty holding on to items. (Pl.'s Objs. 3.) As to this issue, the report explains that the ALJ thoroughly discussed her reasons—including the objective medical evidence, clinical findings, medical opinions, and Cathy's daily activities—for ultimately determining that Cathy had repeatedly complained of pain and difficulty in her left arm. (R. 20–21.) Indeed, as the report noted, "it is only the functional capacity examinations"—

---

[3] The ALJ's opinion contains a paragraph, the first full paragraph on page twenty of the record, in which she discusses the weight assigned to Dr. Hormel's opinions and says that she gives them some weight "to the extent claimant has the ability" to do certain things, including sitting without limitations. (R. 20.) But the wording of that paragraph is unclear as to whether the ALJ is actually saying those are the limitations imposed by Dr. Hormel, or simply that Dr. Hormel's opinions are given weight to the extent they are consistent with the limitations the ALJ sets forth therein. In any event, it is clear that the ALJ properly referred to Dr. Hormel's possible sitting limitation, depending on neck position, as already discussed.

[4] Dr Hormel's first opinion did state that Cathy would need frequent breaks (R. 996), but Cathy's objections do not contain any reference to his opinion concerning breaks, so the court does not address that issue further.

and no prior medical records—"that reflect any impairment in [Cathy's] right arm." (R. & R. 12.) Thus, substantial evidence supports the weight given by the ALJ to Dr. Hormel's opinion.

The second contention is a fairly general one—and apparently meant to apply to all the treating physician opinions—that the ALJ's reasons given in explaining the weight assigned to the various opinions "contain misstatements of fact and are not supported by substantial evidence." (Pl.'s Objs. 4.)

In determining whether there is any error in the report on this issue, the court notes that the report devoted nine pages to reviewing the physicians' opinions as well as the ALJ's explanations for the weight given to them. (R. & R. 4–13.) Other than the alleged misstatements already discussed above, Cathy's objection does not identify any specific misstatement of fact. Accordingly, there is no basis for the court to address this generalized objection, other than reviewing the report for clear error. Finding none, the court overrules this portion of her objection.

**2. Pain and Credibility**

Cathy's second objection is that the report erroneously concluded that the ALJ's residual functional capacity (RFC) and credibility findings were supported by substantial evidence. (Pl.'s Objs. 4.) Again, this argument was made before the magistrate judge. (*Compare id.* at 4 *with* Pl.'s Mem. Supp. Mot. Summ. J. 29–30.) Even if considered de novo, the court will nonetheless adopt the magistrate judge's reasoning.

With respect to her RFC, Cathy contends that the report fails to acknowledge that the ALJ did not explain how the activities cited establish that she can perform work activities over the course of an eight-hour work day. (Pl.'s Objs. 4.) But the report directly addressed the activities cited and their relation to her work day, and it noted that the "ALJ outlined her reasons

8

for determin[ing]" that Cathy's statements regarding the limiting effect of her symptoms were "not entirely credible." (R. & R. 14.) The ALJ did indeed engage in a thorough discussion about how Cathy's activities and sporadic, occasional complaints of pain led to her conclusion that Cathy's "alleged symptoms and limitations may have been overstated." (R. 20–21.)

With respect to the credibility determination, the report explains that the ALJ reasoned that, despite Cathy's arguments to the contrary, her medical records reflect that she did not often complain of pain and that Cathy's allegations of the location of her pain were inconsistent, as already discussed. (R. & R. 14–15.)

Even reviewing this second objection de novo, the court is satisfied that there was substantial evidence to support the ALJ's RFC and credibility determinations. *See*, *e.g.*, *Chafin v. Shalala*, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) ("It is not the proper province of the courts to second-guess the ALJ's credibility determinations.") (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964)). Thus, Cathy's second objection is also overruled.

### III. CONCLUSION

After reviewing the pertinent portions of the record, the report, and the filings by the parties, the court finds that the Cathy's objections mostly repeat the arguments she made in her brief before the magistrate judge and thus fail to trigger de novo review. Even applying de novo review, though, the court finds that the ALJ's decision is supported by substantial evidence, and it concludes that the ALJ applied the correct legal standards. Accordingly, this court will overrule Cathy's objections and adopt the magistrate judge's report and recommendation. The

court will therefore grant the commissioner's motion for summary judgment, deny Cathy's motion for summary judgment, and affirm the commissioner's decision.

An appropriate order will be entered.

Entered: September 30, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge